# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JAVIER MORALES, | Case No. 1:23-cv-00151-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF JOSE JAVIER MORALES AND TO CLOSE THIS ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| | (ECF Nos. 13, 17) |

## I.

## INTRODUCTION

Jose Javier Morales ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and benefits awarded or alternately that the case be remanded for further proceedings arguing the ALJ erred by failing to properly assess his symptom testimony and the residual functional capacity assessment is not supported by substantial

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 9, 10, 11.)

1

1  evidence.

2      For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

3                                              **II.**

4                                       **BACKGROUND**

5      **A.      Procedural History**

6          Plaintiff protectively filed an application for a period of disability and disability insurance

7  benefits on February 4, 2021.  (AR 75.)  Plaintiff's application was initially denied on June 23,

8  2021, and denied upon reconsideration on September 3, 3021.  (AR 100-04, 106-10.)  Plaintiff

9  requested and received a hearing before Administrative Law Judge Matilda Surh ("the ALJ").

10 Plaintiff appeared for a telephonic hearing on February 15, 2022. (AR 39-54.) On March 29, 2022,

11 the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 15-34.)  On December 6,

12 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

13     **B.      The ALJ's Findings of Fact and Conclusions of Law**

14         The ALJ made the following findings of fact and conclusions of law as of the date of the

15 decision, March 29, 2022:

16     • Plaintiff meets the insured status requirements of the Social Security Act through June

17       30, 2024.

18     • Plaintiff has not engaged in substantial gainful activity since May 17, 2018, the alleged

19       onset date.

20     • Plaintiff has the following severe impairment: degenerative disc disease of the lumbar

21       spine.

22     • Plaintiff does not have an impairment or combination of impairments that meets or

23       medically equals the severity of one of the listed impairments.

24     • After careful consideration of the entire record, the ALJ found that Plaintiff has the

25       residual functional capacity to perform medium work as defined in 20 CFR §

26       404.1567(c) except he can frequently stoop, kneel, crouch, crawl, or climb ramps, stairs,

27       ladders, ropes, or scaffolds.

28     • Plaintiff is capable of performing past relevant work as a store laborer.  This work does

not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from May 17, 2018, through the date of this decision.

(AR 23-33.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite his limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,
2  53 F.3d 1035, 1039 (9th Cir. 1995)).

3      **B.    Standard of Review**

4      Congress has provided that an individual may obtain judicial review of any final decision
5  of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).  In
6  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by
7  the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).
8  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find
9  the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. §
10 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant
11 evidence which, considering the record as a whole, a reasonable person might accept as adequate
12 to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting
13 Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson
14 v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential
15 clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek,
16 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a
17 preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),
18 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.
19 Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse
20 the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden
21 of showing that an error is not harmless "normally falls upon the party attacking the agency's
22 determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

23     Finally, "a reviewing court must consider the entire record as a whole and may not affirm
24 simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,
25 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
26 Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may
27 review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th
28 Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

1  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

2  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

3  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

4  400 F.3d 676, 679 (9th Cir. 2005)).

5                                                                 **IV.**

6                                          **DISCUSSION AND ANALYSIS**

7          Plaintiff argues that the ALJ erred by failing to properly consider the medical evidence which

8  supports his subjective complaints.  Plaintiff contends that he has produced evidence demonstrating

9  that his impairments include the diagnosis of severe chronic low back pain, tenderness, decreased

10 range of motion and severe facet arthropathy L5-S1and moderate facet arthropathy L4-L5.  (Mot.

11 for Summary Judgment ("Mot.") 6, ECF No. 13.)  Secondly, Plaintiff asserts that he testified and

12 produced medical evidence demonstrating his symptoms and their effect on his ability to perform

13 work-related activities.  Plaintiff argues that the ALJ's review of the medical and non-medical

14 evidence was selective in finding that Plaintiff's symptoms were not consistent with the medical

15 evidence.  (Mot. 8.)  He states that his symptom testimony is corroborated by the opinions of his

16 treating doctors and the agency physician.  (Mot. 9-10.)  Plaintiff asserts that the medical evidence

17 consistently supports his reported symptoms, and the ALJ's credibility determination was

18 erroneous.  (Mot. 11.)

19         Plaintiff also argues that the ALJ erred in determining his RFC because she improperly

20 weighed the medical evidence and discounted his limitations.  (Mot. 11.)  Plaintiff asserts that the

21 ALJ erred by finding the opinions of his treating providers not persuasive and by finding the

22 opinions of the agency physicians, who are the only doctors finding Plaintiff was capable of

23 medium work, to be persuasive.  Plaintiff contends that the opinions of his examining physicians,

24 when viewed as a whole, present a consistent record.  Plaintiff asserts that this error is not harmless

25 because if he was limited to light work, he would not be able to perform his prior work, and the

26 grid would apply.  (Mot. 12.)

27         Defendant responds that the ALJ properly addressed Plaintiff's subjective complaints.

28 (Def.'s Responsive Brief ("Opp.") 2, ECF No. 17.)  Defendant argues that the ALJ did not

completely reject Plaintiff's symptom testimony but accepted that his impairments significantly limited his functional abilities and imposed an RFC for a limited range of medium work with postural limitations.  Defendant asserts that the ALJ reasonably concluded that Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical record for several reasons.  (Opp. 4.)  First, the ALJ found that Plaintiff's subject testimony was inconsistent with the medical evidence and substantial evidence supports the finding.  (Opp. 4-6.)  Defendant contends that Plaintiff's argument that his testimony was corroborated by his treating doctors and the agency's own doctor fails for three reasons: it relies on medical opinions that the ALJ found to not be persuasive; Plaintiff does not explain how the relatively minor findings in the medical record that are raised in his brief are consistent with his extreme alleged limitations; and even if the medical record support his allegations, that does not prove the ALJ's decision was wrong or requires reversal.  (Opp. 7-8.)  Defendant argues that the prior administrative medical findings by the State agency medical consultants are also support for the ALJ's conclusion that Plaintiff is not disabled and the ALJ provided clear and convincing reasons to discount Plaintiff's subjective testimony.  (Opp. 8-9.)

Defendant asserts that the ALJ properly evaluated the opinions of Plaintiff's treating physicians.  (Opp. 9.)  Defendant contends that the ALJ considered supportability and consistency of the opinions of each of the treating physicians and properly found them to be unpersuasive.  (Opp. 10-14.)

Finally, Plaintiff asserts that even if the Court finds that the ALJ erred, a reversal with payment of benefits would not be warranted, but remand for further proceedings would be appropriate because the record raises serious questions of whether Plaintiff is actually disabled.  (Opp. 14-6.)

While Plaintiff argues that there is substantial evidence to find that he is disabled, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).  The Court shall address the alleged errors raised by Plaintiff below.

1   **A.      Whether the ALJ Erred in Addressing Plaintiff's Subjective Testimony**

2       First, the Court shall consider Plaintiff's argument that the ALJ erred in rejecting his

3   symptom testimony.

4       1.      Legal standard

5       A claimant's statements of pain or other symptoms are not conclusive evidence of a

6   physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn,

7   495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other

8   non-exertional impairment."). Rather, an ALJ performs a two-step analysis to determine whether

9   a claimant's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin,

10  759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3. First, the claimant

11  must produce objective medical evidence of an impairment that could reasonably be expected to

12  produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80

13  F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering,

14  "the ALJ may reject the claimant's testimony about the severity of those symptoms only by

15  providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266,

16  1277 (9th Cir. 2020) (citations omitted).

17      If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other

18  limitations is unreliable, the ALJ must make a credibility determination citing the reasons why

19  the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and

20  what testimony undermines the claimant's complaints. In this regard, questions of credibility and

21  resolutions of conflicts in the testimony are functions solely of the Secretary. Valentine v. Astrue,

22  574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

23      In addition to the medical evidence, factors an ALJ may consider include the location,

24  duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms;

25  the type, dosage, effectiveness or side effects of any medication; other measures or treatment used

26  for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily

27  activities, work record, or an unexplained failure to pursue or follow treatment—as well as

28  ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal

1 contradictions in the claimant's statements and testimony, and other testimony by the claimant

2 that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

3 Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

4 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as

5 a whole, including objective medical evidence; the claimant's representations of the intensity,

6 persistence and limiting effects of her symptoms; statements and other information from medical

7 providers and other third parties; and any other relevant evidence included in the individual's

8 administrative record.  SSR 16-3p, at *5.

9      2.   Analysis

10      The ALJ addressed Plaintiff's testimony in the opinion.

11
12     The claimant reported that he was unable to work because of, in part, a spinal injury, mobility issues, an inability to lift more than five pounds, bilateral neuropathy and swelling of the feet (Ex. 1E).  In a Function Report dated March 16, 2021, the claimant reported that he was unable to stand for more than five minutes, lift more than ten pounds, and walk for more than thirty minutes (Ex. 6E/1).  He indicated
13
14 that he was able to engage in person care but that it caused pain (Ex. 6E/2).  He attested that his impairments affected his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use his hands (Ex. 6E/6).  He noted
15 that he used a cane when he could not otherwise walk (Ex. 6E/7).

16
17     The claimant testified that he is unable to work because performing any task results in pain in his back, including when walking.  He testified that such pain is primarily located in his lower back and legs.  He testified that he has received physical therapy,
18 chiropractic, acupuncture, and injection based treatments, but found none of them wholly relieve pain.  He testified that he is able to rake leaves, but not pick them up.
19 He testified that he takes his granddaughters to school which is three minutes away. He testified that he will not leave his house when it is extremely cold because it
20 worsens pain.  He testified that he occasionally goes shopping for groceries.  He testified that he is unable to lift more than ten to twelve pounds.  He testified that he
21 could walk for thirty to forty minutes before he needed to take a break of ten minutes. He testified that he could stand for a couple minutes at a time.

22 . . .
    After careful consideration of the evidence, I find that the claimant's medically
23 determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence
24 and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

25 (AR 25-6.)   The ALJ specifically noted several inconsistencies with Plaintiff's testimony in

26 addressing the medical record.  Plaintiff argues that he has presented evidence consistent with his

27 symptom testimony, but as discussed below, the Court finds that the ALJ provided clear and

28 convincing reasons to find that Plaintiff's symptoms were not as severe as he alleged.

1    Initially, Plaintiff argues that he has produced objective evidence of his medical impairments,

2    and the ALJ did find that his "medically determinable impairments could reasonably be expected

3    to cause the alleged symptoms."   (AR 26.)   The issue here is whether the ALJ provided clear and

4    convincing reasons to find that Plaintiff's symptoms were not as severe as he alleged.

5        **a.    Contradiction with medical record**

6    Plaintiff argues that the medical record of his treating providers supports his symptom

7    complaints because they demonstrate tenderness to palpation and restricted range of motion.   The

8    ALJ specifically addressed those findings that he found to be inconsistent with or to contradict

9    Plaintiff's symptom complaints.

10    The determination that a claimant's complaints are inconsistent with clinical evaluations

11    can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's

12    testimony.   Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir.

13    1999).   The ALJ properly considered this evidence in weighing Plaintiff's credibility.   Subjective

14    pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective

15    medical evidence."   See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not

16    fully   corroborated   by   the   objective   medical   findings,   in   and   of   itself,   is   not

17    a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will

18    not reject your statements about the intensity and persistence of your pain or other symptoms or

19    about the effect your symptoms have on your ability to work solely because the available objective

20    medical evidence does not substantiate your statements.").   Rather, where a claimant's symptom

21    testimony is not fully substantiated by the objective medical record, the ALJ must provide an

22    additional reason for discounting the testimony.   See Burch, 400 F.3d at 680–81.

23    Nevertheless, the medical evidence "is still a relevant factor in determining the severity of

24    [the] claimant's pain and its disabling effects."   Burch, 400 F.3d at 680–81; Rollins v. Massanari,

25    261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).   Furthermore,

26    Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence

27    from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its

28    own to meet the clear and convincing standard.   See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th

1  Cir. 1995) ("The ALJ … identified several contradictions between claimant's testimony and the

2  relevant medical evidence and cited several instances of contradictions within the claimant's own

3  testimony.  We will not reverse credibility determinations of an ALJ based on contradictory or

4  ambiguous evidence."); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting

5  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's

6  determination claimant's testimony was "not entirely credible" based on contradictions with

7  medical opinion) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the

8  claimant's subjective testimony."); see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir.

9  2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting

10  symptom testimony: (1) insufficient objective medical evidence to establish disability during the

11  insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods

12  v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May

13  13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of

14  symptom testimony, inconsistency with the medical evidence or medical opinions can be

15  sufficient." (emphasis in original)).  In applying the clear and convincing standard, the Ninth Circuit

16  affirmed "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's

17  subjective testimony."  Carmickle, at 533 F.3d at 1161.

18           i.       Inconsistency with medical record

19           The ALJ noted a June 7, 2018, primary physician progress report.  (AR 26, 428-30.)

20  Plaintiff complained that his lower back was about the same, Toradol failed to help him, and he had

21  been walking.  (AR 428.)  Examination noted that Plaintiff had tenderness on palpation of the

22  lumbar spine with muscle spasms toward the left para-lumbar muscles, a normal gait, and a negative

23  straight leg raise.  (AR 26, 429.)  He was directed to continue his home exercise program and was

24  referred to physical therapy.  (AR 26, 430.)

25           The ALJ also noted that Magnetic Resonance Imaging ("MRI") of Plaintiff's lumbar spine

26  on August 1, 2018, showed L4-S1 moderate facet stenosis and disc contact with left L3 and L4

27  exiting nerve roots.  (AR 26, 368.)  On August 30, 2018, Plaintiff reported that he was walking

28  while  conservative  treatment,  including  chiropractic  treatment  and  floor  exercises  was

1  recommended.  (AR 26.)  This record notes that Plaintiff reported he was feeling about the same
2  and was walking.  He stated he was not keen on getting epidural injections or surgery for his lower
3  back.  He had physical therapy which failed to help him.  (AR 472.)  On examination, his gait was
4  noted to be normal.  Lower back exhibited tenderness on palpation of the lower spine at the level
5  of L5-S1 with muscle spasm toward the left paralumbar muscles.  Straight leg raising was negative
6  with no sciatica or radicular pain.  Faber test, Babinski's and clonus were negative.  (AR 473.)
7  Patellar and Achilles reflexes were 2+ and symmetrical.  He was encouraged to see Dr. Grant so he
8  knows what his options are even though he was not interested in epidural injections.  Chiropractic
9  treatment was to be requested and Plaintiff was encouraged to continue the floor exercises and
10 walking.  (AR 474.)

11      The ALJ considered that treatment notes from a lumbar spinal surgical consultation on
12 October 10, 2018, detailed that Plaintiff reported pain with palpation of the lumbar spine as well as
13 an extension, lateral bending, or rotation.  (AR 26-7, 371.)  Despite Plaintiff's allegations of
14 extremity numbness, a sensory examination was intact, and it was reported that neck range of
15 motion testing did not reproduce his symptoms.  (AR 27, 371.)  The treatment provider noted that
16 Plaintiff's symptoms "seem to be above and beyond what [he] would expect to find based on
17 [Plaintiff's] MRI[.]"  (AR 27, 371.)  Plaintiff was found not to be a candidate for any surgical
18 intervention, while lumbar epidurals and physical therapy was recommended.  (AR 27, 371.)

19      On October 25, 2018, Plaintiff reported that he had seen Dr. Grant who recommended
20 conservative treatment.  He was walking and exercising but his pain was getting worse instead of
21 better.  (AR 487.)  He was noted to be walking with a hunched forward gait and there was diffuse
22 tenderness to the lumbar spine, but mostly at L5 spinous process and facet joints.  Movement was
23 restricted.  Deep tendon reflexes were normal and there was no weakness with extension of the big
24 toe.  (AR 488.)  Plaintiff was counseled to walk four to six miles per day with extension posterior
25 and was shown floor exercises he can do.  Chiropractic treatment was recommended.  (AR 27, 489.)

26      The ALJ also considered that despite Plaintiff reporting ongoing significantly limiting pain,
27 on December 5, 2018, only conservative treatment consisting of completing chiropractic treatment
28 was recommended.  (AR 27, 504.)  At this visit, Plaintiff complained that his pain was about the

same and maybe worse than before.  He had attended one chiropractic treatment.  He had a TENS unit and was using it every day.  He was against receiving any epidural injections.  (AR 502.)  (Ex. 2F/154, 156).  The record notes that Plaintiff now had complaints involving different joints and body parts even though he has not worked.  The physician noted that he might have some kind of arthritis, but Plaintiff was not willing to investigate other possibilities, so it was difficult to help him.  Examination findings remained the same.  (AR 503.)

On March 18, 2019, Dr. McCormack evaluated Plaintiff and observed that he did not have an antalgic gait, could walk on his toes, heels, and tandem walk.  Dr. McCormack reported that straight leg raise produced back pain, Plaintiff had moderate percussive tenderness and pain to palpation at L5-S1, but retained normal strength, sensation, and reflexes.  (AR 27, 532.)  Examination noted that muscle bulk and tone were full.  (AR 532.)  Plaintiff had negative provocative maneuvers over the SI joint and leg lengths were equal.  (AR 532-33.)  Dr. McCormack noted that an MRI did not show much in terms of disc disease, flexion and extension films showed some anterolisthesis of L5 on S1 on flexion, and recommended a CT-scan.  (AR 27, 533.)

An X-ray of the Plaintiff's lumbar spine on March 18, 2019, showed mild posterior L5 vertebral height loss, no evidence of dynamic instability of lumbar spine on flexion and extension view, mild multilevel degenerative disc disease throughout the lumbar spine, and facet arthropathy affecting the lower lumbar spine.  (AR 27, 348.)  A CT-scan on April 2, 2019, showed severe L5-S1 and moderate L4-L5 facet arthritic changes and grade 1 anterolisthesis of L5 over S1.  (AR 27, 641.)  Despite the CT-scan results, on April 19, 2019, Dr. McCormack reported that following a review of the CT-scan, surgery was not recommended, and it was noted that care should not extend beyond physical therapy and chiropractic.  (AR 27, 901.)

Upon examination on May 22, 2019, by Jagdish Patel, M.D., Plaintiff was observed to walk with a hunched forward gait and to have diffuse tenderness in the lumbar spine, and restricted forward bending, however only treatment by orthopedic pain management was recommended.  (AR 27, 392.)

The ALJ noted that orthopedic pain management records from June 3, 2019, show that Plaintiff was not as limited as observed by Dr. Patel. (AR 27.)  The record notes that although

1  Plaintiff had an antalgic gait, he did not require an assistive device, had no difficulties walking on
2  heels/toes, retained sensation in all extremities, and had five of five strength in testing of lower
3  extremities.  It was further noted that two separate surgeons had informed Plaintiff that he was not
4  a candidate for surgery, no current medication was being used, and only a referral for an MRI was
5  provided.  (AR 27, 396.)  The ALJ also noted that on that same day, Dr. Patel reported that Plaintiff
6  had diffuse tenderness to the lumbar spine, walked with a hunched forward gait, and had restricted
7  movements with forward bending and extension, without indicating why such findings were more
8  limiting than the orthopedic pain management findings from the same day.  (AR 27, 401.)

9       Orthopedic records from June 10, 2019, detailed that Plaintiff was in no acute distress, had
10  no tenderness to palpation of the spine, but positive restriction in flexion, extension, rotation or
11  lateral bending, and a mildly positive straight leg raise.  (AR 27, 408.)  Neurologic examination
12  notes an antalgic gait, but no assistive device is needed for ambulation, and there are no difficulties
13  walking on heels and toes.  Sensation is intact, strength is 5/5 bilaterally to hips, knees, ankles, and
14  great toe, and reflexes are 2+ bilaterally.  (AR 408.)  Plaintiff was taking no medication.  (AR 409.)
15  At that time, injections and otherwise conservative treatment was recommended.  (AR 27, 409.)

16       On July 1, 2019, Plaintiff received bilateral lumbar facet joint injections.  (AR 27, 823.)  At
17  an orthopedic evaluation on August 21, 2019, Plaintiff again presented in no acute distress, had no
18  tenderness to palpation of the spine, but positive restriction in flexion, extension, rotation or lateral
19  bending, and a mildly positive straight leg raise.  (AR 27-8, 421.)  Neurologic examination notes
20  an antalgic gait, but no assistive device is needed for ambulation, and there are no difficulties
21  walking on heels and toes.  Sensation is intact, strength is 5/5 bilaterally to hips, knees, ankles, and
22  great toe, and reflexes are 2+ bilaterally.  (AR 421.)  It was noted that Plaintiff reported no relief
23  following facet injections and he declined to pursue further conservative care.  (AR 28, 422.)  It is
24  also noted that Plaintiff is taking no medication.  (AR 422.)

25       Upon examination on March 18, 2020, Plaintiff was observed to stand in a slightly flexed
26  posture, ambulate with a non-antalgic gait, to have tenderness throughout the lumbar spine, and
27  decreased sensation in the lower extremities, while he retained five of five strength in the lower
28  extremities.  (AR 28, 606.)  At that time, self-care strategy counseling, including a regular exercise

regimen and medication-based treatment was provided.  (AR 28, 606-07.)

Telemedicine records from April 27, 2020, noted that Plaintiff reported some improvement of pain levels, but medication was modified due to his report of sedation.  (AR 28, 609.)  Upon examination on July 23, 2020, it was noted Plaintiff ambulated with a non-antalgic gait, had tenderness in the lumbar spine, intact sensation in the lower extremities, and strength was five of five in the lower extremities.  (AR 28, 613.)  Plaintiff was able to flex his low back with his fingers going to the ankles with mild pain and could extend his low back 10 inches with pain.  Straight leg raise was positive for back pain and leg tightness.  (AR 613.)

On September 2, 2020, Plaintiff was noted to ambulate with a non-antalgic gait, to have bilateral leg pain with straight leg raise testing, but intact sensation in the lower extremities, while testing showed five of five strength in the lower extremities.  (AR 28, 713.)

On October 15, 2020, Dr. Hellner conducted a Qualified Medical Evaluation of Plaintiff.  (AR 28, 587-600.)  Dr. Hellner noted that Plaintiff appeared in no acute distress but had a marked inability to move with any degree of effort without significant grimacing and pain.  (AR 28, 595.)  Dr. Hellner noted that Plaintiff had tenderness of the lumbar spine with reproducible back pain only during straight leg raise testing.  (AR 28, 595.)  There was no hip, thigh, or sciatic symptomology.  (AR 595.)  Dr. Hellner reported that Plaintiff had limited range of motion of upper extremities without associated muscular or neurological examination and no evidence of atrophy.  (AR 28, 595-96.)

An EMG report from December 4, 2020, showed normal bilateral lower extremities.  (AR 28, 626, 637.)

Dr. Faurbo, psychiatric consultative examiner, evaluated Plaintiff on April 20, 2021, and observed that Plaintiff presented in a friendly manner and ambulated with a cane.  (AR 28, 649.)  Plaintiff reported to Dr. Faurbo that he was independent for basic activities of daily living and did not need help with preparing meals.  (AR 28, 651.)

On May 7, 2021, Dr. Sharma, internal medicine consultative examiner, evaluated Plaintiff and observed that he was in no acute distress.  Dr. Sharma observed that Plaintiff had a full range of motion of the upper and lower extremities.  (AR 28, 655.)  Dr. Sharma indicated that Plaintiff

had tenderness to palpation of the lumbar spine and pain on forward flexion and extension, but a negative straight leg raise and no muscle spasms.  Plaintiff had positive Tinel's signs bilaterally, but intact sensation throughout the upper and lower extremities.  Dr. Sharma reported that Plaintiff's strength was five of five throughout, he was able to walk without difficulties, and no assistive device was noted despite the observations of Dr. Faurbo one month prior of Plaintiff's use of a cane.  (AR 28, 656.)

Treatment notes from May 10, 2021, indicated that Plaintiff reported a 20 percent to 30 percent reduction in pain with medication as well as improved sleep, while Plaintiff reported feeling stable with respect to pain.  (AR 29, 666.)  Further, he was observed to ambulate with a non-antalgic gait and straight leg raise testing was negative.  (AR 29, 666.)  At that time, medication-based treatment continued to be provided.  (AR 29, 667.)

Telephone treatment notes from June 24, 2021, detailed that Plaintiff requested medication refills without notations of limited efficacy, while it was noted that he did not sound distressed on the telephone.  (AR 29, 1378-79.)  The record notes his low back pain is stable.  (AR 1379.)  An X-ray on August 19, 2021, of Plaintiff's lumbar spine showed mild disc degeneration without disc space height loss and mild lower lumbar osseous facet arthropathy.  (AR 29, 1406.)  On August 19, 2021, Plaintiff sought treatment reporting two months of worsening back pain following travel to Mexico, an activity which the ALJ found suggests that he is not as limited as alleged, and assisting his brother get off the ground.  (AR 29, 1400.)  An examination noted tenderness to palpation of the lumbar spine, a positive straight leg raise on the left, equal sensation bilaterally, and four of five strength bilaterally.  Only medication-based treatment was provided.  (AR 29, 1401.)  The ALJ noted that the decrease in strength appears only for a limited time as on January 24, 2022, Plaintiff was observed to have five of five strength throughout.  (AR 29, 1408.)  Plaintiff complained of low back pain after reporting that he had three falls, the most recent three weeks ago.  (AR 1407.)

An MRI of Plaintiff's lumbar spine on September 11, 2021, showed, in part, mild bilateral L5-S1 facet arthritis.  (AR 29, 1404.)

On January 24, 2022, Plaintiff was observed to have a positive straight leg raise, and multiple sites of tenderness to palpation in the paraspinal muscles, but grossly intact sensation and

1   five of five strength throughout all major muscle groups in the bilateral lower extremities.  (AR 29,

2   1408.)  At that time, Plaintiff received bilateral lumbar paraspinal injections.  (AR 29, 1409.)

3   Plaintiff argues that Dr. Patel consistently noted that Plaintiff walked with a hunched

4   forward gait, had tenderness in the lower spine and restricted range of motion.  (Mot. 9.)  However,

5   the ALJ did consider these findings by Dr. Patel as discussed above.  Plaintiff also argues that Dr.

6   McCormack found that Plaintiff had persistent back pain and had worked his whole life without

7   pain until his injury and he believed that Plaintiff's back pain was a spondylitic defect at L5.  (Mot.

8   9.)  The ALJ did consider Dr. McCormack's findings on this date which included straight leg raise

9   produced back pain, Plaintiff had moderate percussive tenderness and pain to palpation at L5-S1,

10   but retained normal strength, sensation, and reflexes. (AR 27, 532.)  Examination noted that muscle

11   bulk and tone were full.  (AR 532.)  Plaintiff had negative provocative maneuvers over the SI joint

12   and leg lengths were equal.  (AR 532-33.)  Plaintiff also argues the results of his MRI (Mot. 9), but

13   the ALJ considered that Dr. McCormack noted that an MRI did not show much in terms of disc

14   disease, flexion and extension films showed some anterolisthesis of L5 on S1 on flexion and

15   recommended a CT-scan.  (AR 27, 533.)

16   Plaintiff argues that Dr. Hellner conducted an examination which noted marked tenderness

17   over the left radial head of the elbow with negative Tinel's signs, tenderness of the lumbar spine,

18   and assessed an eight percent impairment rating and provided work restrictions.  (Mot. 9.)  Again,

19   the ALJ did consider the findings of Dr. Hellner.  Dr. Hellner noted that Plaintiff appeared in no

20   acute distress but had a marked inability to move with any degree of effort without significant

21   grimacing and pain.  (AR 28, 595.)   Dr. Hellner noted that Plaintiff had tenderness of the lumbar

22   spine with reproducible back pain only during straight leg raise testing.  (AR 28, 595.)  There was

23   no hip, thigh, or sciatic symptomology.  (AR 595.)   Dr. Hellner reported that Plaintiff had limited

24   range of motion of upper extremities without associated muscular or neurological examination and

25   no evidence of atrophy.  (AR 28, 595-96.)  Additionally, Dr. Hellner noted,

26          this patient had normal range of motion and negative straight leg raising bilaterally
            from the time of the injury through the first several months.  Upon obtaining the
27          services of an attorney, he had a marked decreased range of motion, significant
            increase in pain dysfunction, and was noted by Dr. Patel on June 7, 2018 that "I do
28          not think he is motivated", and by Dr. Joseph Grant on October 10, 2018 that his

"symptoms are above and beyond what I would expect and his neurologic complaints are non-physiologic."   Based on these findings, I feel there is a significant psychosomatic disorder present in which the interpretation of this patient's functional capability is markedly effected, particularly with respect to the odd and unusual upper extremity symptoms, which appear to have no correlation at all with the industrial injury or industrial exposure as they developed about 3 weeks following the injury and include dizziness and clumsiness, which again based on the objective testing of the lumbar spine, appear to be lacking in any correlation with any industrial activity or exposure.

(AR 597.)  Dr. Heller also noted that despite his highly subjective component, Plaintiff range of motion is actually reasonably good.  (AR 598.)

Plaintiff argues that Dr. Sharma noted tenderness over both elbows, the lumbar spine, paravertebral region and pain on flexion and extension, and had positive Tinel's signs at the wrists and elbows.  (Mot. 10.)  The ALJ also considered Dr. Sharma's findings.  Dr. Sharma observed that Plaintiff had a full range of motion of the upper and lower extremities.  (AR 28, 655.)  Dr. Sharma indicated that Plaintiff had tenderness to palpation of the lumbar spine and pain on forward flexion and extension, but a negative straight leg raise and no muscle spasms.  Plaintiff had positive Tinel's signs bilaterally, but intact sensation throughout the upper and lower extremities.   Dr. Sharma reported that Plaintiff's strength was five of five throughout, he was able to walk without difficulties, and no assistive device was noted.  (AR 28, 656.)

Plaintiff argues that Dr. Grewal noted multiple sites of tenderness to palpation in the lumbar spine, positive facet loading and tenderness to palpation overlying the bilateral sacroiliac joints.  (Mot. 10.)  The ALJ did consider these findings.  On January 24, 2022, Plaintiff was observed to have a positive straight leg raise, and multiple sites of tenderness to palpation in the paraspinal muscles, but grossly intact sensation and five of five strength throughout all major muscle groups in the bilateral lower extremities.  (AR 29, 1408.)  At that time, Plaintiff received bilateral lumbar paraspinal injections.  (AR 29, 1409.)

While there are findings that were consistent with Plaintiff's symptom testimony, the ALJ could reasonably find that his testimony regarding the limiting effects of his symptoms was not as severe as alleged based on the review of the record.  As the ALJ noted, despite the findings of pain, Plaintiff consistently had normal strength and sensation, was noted to have reasonably good range of motion, and did not use an assistive device to ambulate other than at the psychiatric consultative

examination on April 20, 2021.  Further, as the ALJ noted there are notations in the record that Plaintiff's symptoms "seem to be above and beyond what [the treatment provider] would expect to find based on [the claimant's] MRI."  (AR 27, 371.)

ii.   Contradiction with the medical record

As discussed above, the ALJ noted that Plaintiff's treating provider noted that his symptoms "seem to be above and beyond what [the treatment provider] would expect to find based on [the claimant's] MRI."  (AR 27, 371.)  Plaintiff was seen for a lumbar spine surgical consultation on October 10, 2018.  (AR 371-72.)  Physical examination notes:

> The patient moans and groans with any movement.  He [] sits with a forward flexed posture.  Stands-with a fairly erect posture.  He complains of pain -with palpation of the lumbar spine, also any extension, lateral bending or rotation.  He is reluctant to do a toe stand and heel walk.  He said he is in too much pain.  He has pain in his heels.  He has no focal motor deficit other than giving away weakness of his dorsiflexors bilaterally symmetrically.  Deep tendon reflexes are 2-3+ symmetrically with 1 to 2 beats of clonus, nonsustained.  Plantar reflexes are downgoing.  Sensory exam is intact.  He has pain with palpation of the lumbar spine only.  Neck range of motion does not reproduce his symptoms although he claims when he moves his arms his lower back hurts.

(AR 371.)  Dr. Grant found that Plaintiff's "symptoms seem to be above and beyond what I would expect to find and his neurological complain[t]s are nonphysiologic based on his MRI."  (AR 372.)  Plaintiff was found not to be a candidate for any surgical intervention.   (AR 27, 372.)  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."   Carmickle, 533 F.3d at 1161.   The Court finds the ALJ's finding that Plaintiff's complaints are more severe than would be expected from the medical findings is a clear and convincing reason to request Plaintiff's symptom testimony.

**b.     Failure to seek treatment or to follow a prescribed course of treatment**

The ALJ also considered a primary physician's progress report, completed by Dr. Patel on July 26, 2018, in which it is noted that on July 12, 2018, Plaintiff "failed to respond to physical therapy [but at] the same time he has not been following the instruction and has refused to get any work up done by his own doctor to figure any other causes of muscle pain."  (AR 26, 459.)  The ALJ also considered an August 30, 2018, primary physician progress report in which Dr. Patel noted that Plaintiff is walking, and conservative treatment was recommended including chiropractic

treatment and "to continue the floor exercises and walking and eventually he will feel better." (AR 26, 472, 474.) In rejecting symptom testimony, the ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ's finding that Plaintiff failed to follow recommended treatment is a clear and convincing reason to reject Plaintiff's symptom testimony.

**c.      Conflicts between testimony and conduct**

Additionally, the ALJ noted that on August 19, 2021, Plaintiff sought treatment and reported worsening back pain after traveling to Mexico and helping to lift his brother off the ground, an activity which the ALJ found suggested that Plaintiff was not as limited as alleged. (AR 29, 1400.) Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be based on conflicts between the claimant's testimony and his own conduct, or on internal contradictions in that testimony). The ALJ's finding that Plaintiff engaged in activity that conflicted with his symptom testimony is a clear and convincing reason to reject Plaintiff's symptom testimony.

The Court finds no error in the ALJ's analysis of Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms as the ALJ provided clear and convincing reasons to reject Plaintiff's statements regarding the severity of the alleged symptoms.

**B.      Whether the ALJ Improperly Weighed the Medical Opinion Evidence**

The Court next considers Plaintiff's argument that the ALJ improperly weighed the medical opinion evidence and rejected the opinions of his treating and examining physicians that he was limited to at least light work.

1.      Legal Standard

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017). As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record," where contradictory evidence is present. Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

2.   Analysis

Plaintiff argues that the ALJ erred by improperly weighing the medical evidence and discounting limitations opined by the examining physicians who all found that he was limited to at least light work.  (Mot. 11.)  In his opinion, the ALJ addressed the medical opinions and prior administrative findings in the record.

a.   **Prior administrative findings**

The ALJ found the opinions of Drs. Khong and Laiken, state agency examiners, to be persuasive.  (AR 29.)  On May 26, 2021, Dr. Khong evaluated Plaintiff's residual functional capacity at the initial level of review.  (AR 69-71.)  Dr. Khong opined that based on the radiographic and clinical findings (AR 71), Plaintiff was capable of frequently lifting and carrying 25 pounds and occasionally lifting and carrying 50 pounds in an 8-hour workday.  Plaintiff could stand and/or walk 6 hours and sit with normal breaks for 6 hours in an 8-hour workday.  (AR 29, 69.)  Plaintiff could frequently climb ramps/stairs, ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl; balancing was unlimited.  (AR 29, 70.)  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  (AR 70.)

On August 16, 2021, Dr. Laiken evaluated Plaintiff's residual functional capacity on reconsideration.  (AR 88-90.)  Dr. Laiken found that no new or worsening allegations had been reported, imaging and electrodiagnostic studies were not consistent with the severity of Plaintiff's

1  complaints.  Records noted "functional" component and "+ Waddell's."  Dr. Laiken found that the

2  prior administrative finding at the initial level was persuasive and there were no material errors.

3  The objective evidence in the file was supportive and consistent with Dr. Khong's assessment.  (AR

4  90.)

5      Plaintiff argues that these are the only physicians who found that Plaintiff can perform

6  medium work, including lifting 50 pounds occasionally, and merely states that the examining

7  physicians' opinions when viewed as a whole show a consistent record.  (Mot. 12.)  "The weight

8  afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s]

9  supporting explanations for [his] opinions.' "  Garrison, 759 F.3d at 1012 (citations omitted).  While

10  Plaintiff may disagree with the agency physician's opinion, he has failed to present any argument,

11  other than that the opinions the ALJ found to be unpersuasive, support a finding of disability.

12      The ALJ found that Drs. Khong and Laiken's opinions were supported by their narratives.

13  (AR 29.)  Further, the ALJ noted that Dr. Laiken had the opportunity to review all the evidence

14  "except for sixteen pages which detailed that although the claimant had tenderness to palpation of

15  the paraspinal muscles, he had four or five of five strength, was provided bilateral lumbar paraspinal

16  injections, and an MRI showed, in part, mild bilateral L5-S1 facet arthritis."  (AR 29, 1404, 1408-

17  09.)  Plaintiff has not challenged that ALJ's reasons to find the prior administrative findings

18  persuasive and has therefore waived the issue.  Ghanim, 763 F.3d at 1165.

19      **b.    Dr. Sharma's Opinion**

20      The ALJ considered that Dr. Sharma opined that Plaintiff could perform light work, except

21  he could occasionally bend and stoop, and frequently push and pull bilaterally.  (AR 30, 656-57.)

22  The ALJ was not persuaded by the opinion of Dr. Sharma, finding it was only supported by a one-

23  time examination of Plaintiff and Dr. Sharma's record review appears to be limited to only imaging

24  of Plaintiff's lumbar spine.  (AR 30, 654.)  The ALJ's finding regarding the limited review of the

25  medical record appears to be accurate as Dr. Sharma did only reference the imaging in his review

26  of the medical record.

27      In addition, the ALJ found the manipulative limitations opined by Dr. Sharma are based upon

28  findings of bilateral elbow pain, while the remainder of the record does not show that Plaintiff was

1    treated for such symptoms. (AR 30, 655.) Further, the limitation to light work is based upon

2    Plaintiff's subjective reporting of pain and is inconsistent with imaging of Plaintiff's lumbar spine

3    and reporting by treatment providers that Plaintiff was not a candidate for spinal surgery. (AR 30,

4    348, 368, 371, 641, 901, 1404-06.) The ALJ also found that the limitation to light work is

5    inconsistent with examinations throughout the period that show that Plaintiff retained five of five

6    strength. (AR 30, 396, 606, 613, 656, 713, 1408.)

7        The ALJ reasonably found that Dr. Sharma's opinion was based on a one-time examination,

8    was not supported by the medical imaging and his limitation to light work was based on Plaintiff's

9    symptom testimony which the ALJ had properly discredited. An ALJ can reject a physician's

10   opinion that is premised on a claimant's subjective complaints that have been properly discounted.

11   Fair v. Bowen, 885 F.2d 597, 605 (1989). Further the ALJ reasonably found that Dr. Sharm's

12   opinion was inconsistent with the medical record which showed that Plaintiff had never received

13   treatment for bilateral elbow pain, he was not a candidate for back surgery, and examination

14   findings were consistently 5/5 strength in the bilateral extremities. The revised regulations require

15   the ALJ to consider the amount of objective evidence and supporting explanations presented by the

16   medical source. 20 C.F.R. 404.1520c(c). The Court finds that the ALJ did not err in finding that

17   Dr. Sharma's opinion was not persuasive.

18       **c.      Dr. Patel's Opinion**

19       The ALJ also considered that Dr. Patel rendered a myriad of opinions for limited time frames

20   of Plaintiff's functional abilities associated with his Workers' Compensation claim. (AR 30.) In a

21   form dated May 17, 2018, Dr. Patel opined that Plaintiff could lift less than ten pounds and not

22   bend. (AR 30, 426.) Between May 24, 2018, and June 21, 2018, Dr. Patel opined that Plaintiff

23   could lift/carry up to ten pounds. (AR 30, 431, 440-41, 445.) On a form dated July 5, 2018, Dr.

24   Patel opined that Plaintiff could occasionally lift, carry, push, and pull twenty pounds. (AR 30,

25   449-50.) On July 12, 2018, Dr. Patel opined that Plaintiff could occasionally lift, carry, push, and

26   pull ten pounds, and seldom bend/stoop. (AR 30, 455-55.) Dr. Patel opined between July 26, 2018,

27   and August 3, 2018, that Plaintiff could occasionally lift, carry, push, and pull ten pounds, and

28   occasionally bend/stoop. (AR 30, 459-60, 465-66.) Between August 17, 2018, and September 13,

2018, Dr. Patel opined that Plaintiff could lift and carry twenty pounds.  (AR 30, 469-70, 474-75, 479-80.)  Then again between September 27, 2018, and January 9, 2019, Dr. Patel opined that Plaintiff could lift and carry up to ten pounds.  (AR 30, 485-86, 490-91, 495-96, 500-01, 505-06, 510-11, 515-16.)  On January 31, 2019, Dr. Patel opined that Plaintiff could occasionally lift, carry, push, and pull twenty pounds.  (AR 30, 520-21.)  On February 20, 2019, Dr. Patel opined Plaintiff should limit lifting and carrying to twenty pounds.  (AR 30, 525-26.)   Dr. Patel opined on March 6, 2019, that Plaintiff should limit lifting and carrying to ten pounds.  (AR 30, 530-31.)  On April 3, 2019, Dr. Patel opined that Plaintiff could occasionally lift, carry, push, and pull ten pounds. (AR 30, 537-38.)  Between April 17, 2019, and April 24, 2019, Dr. Patel opined that Plaintiff should limit lifting and carrying to twenty pounds.  (AR 30, 542-43, 547-48.)  On May 8, 2019, Dr. Patel opined that Plaintiff could occasionally lift, carry, push, and pull twenty pounds.  (AR 30, 551-52.) On July 10, 2019, Plaintiff's examination findings remained the same, but Dr. Patel opined that Plaintiff was unable to work due to pain.  (AR 555, 556.)  On July 31, 2019, Dr. Patel opined that Plaintiff could lift no more than ten pounds, no more than occasionally climb up or down, and seldom bend over.  (AR 30, 564, 578-79.)  The same day, Dr. Patel opined that Plaintiff could bend, squat, climb, and twist for between two and four hours, and lift and carry no more than ten pounds at shoulder height.  (AR 30, 565-66.)

The ALJ stated he was not persuaded by the opinions of Dr. Patel as such opinions are supported by limited to no narratives and are not supported by Dr. Patel's examinations of Plaintiff. (AR 31.)  As an example, the ALJ noted that on January 9, 2019, Dr. Patel opined that Plaintiff could lift and carry up to ten pounds.  (AR 31, 515-16.)  The physical findings associated with such opinion were that Plaintiff walked with a hunched forward gait, there was diffuse tenderness to the lumbar spine but mostly at L5 spinous process and facets joints, movements were restricted with forward bending of about 30 degrees and extension is zero degrees, and his deep tendon reflexes were normal and there with no weakness with extension of the big toe.  (AR 31, 165.)  Thereafter, on January 31, 2019, Dr. Patel opined that Plaintiff could occasionally lift, carry, push, and pull twenty pounds.  (AR 31, 520-21.)  Yet, the physical findings associated with this opinion were exactly the same as the January 9, 2019, physical findings that Plaintiff walked with a hunched

forward gait, there was diffuse tenderness to lumbar spine but mostly at L5 spinous process and facets joints, movements were restricted with forward bending of about 30 degrees and extension was zero degrees, and his deep tendon reflexes were normal with no weakness with extension of the big toe.  (AR 31, 518.)  Dr. Patel did not provide a narrative or any other basis to account for the change in limitations between the January 9, 2019, and January 31, 2019, while the physical findings remained the same.  (AR 31, 513-21.)   The ALJ found that this occurs throughout Dr. Patel's treatment notes, which contain minimal to no changes in physical findings to support the changes in limitations opined by Dr. Patel and make such opinions of limited probative value.  (AR 31.)  The ALJ also found the opinions of Dr. Patel are of limited probative value, as they assume that Plaintiff may have an autoimmune disease, but that Plaintiff did not follow-up with his own treatment provider for such evaluation nor did Dr. Patel conduct an evaluation for an autoimmune disease.  (AR 31, 512-14.)

The ALJ reasonably found that Dr. Patel's opinions were not persuasive because the changing limitations were not associated with any change in physical examination.  Initially, Plaintiff's examinations all note that his gait was normal.  On examination of the lumbar spine the lower back exhibited tenderness on palpation of the lumbar spine at the level of LS-SI with muscle spasm towards the left para-lumbar muscles.  Range of motion: Flexion - 90°; Extension - 30°; Right side bending - 30°; Left side bending - 30°; Right rotation - 30°; Left rotation - 30°.  Straight Leg Raising Test was negative with no sciatica or radicular pain.  Contralateral Straight leg raise, Faber Test, Babinski's and Clonus Test were all negative.  Reflexes: patellar 2+ and symmetrical; Achilles 2+ and symmetrical.  (AR 429, 438, 443, 448, 453, 463, 468, 473, 478, 483-84.)  It was not until October 25, 2018, that examination started noting Plaintiff walked with a hunched forward gait. There was diffuse tenderness to lumbar spine but mostly at LS spinous process and facets joint.  Movements were restricted with forward bending of about 30° and extension is 0°.  His deep tendon reflexes were normal and there was no weakness with extension of the big toe.  (AR 488, 493, 498, 503, 508, 513, 518, 524, 528, 536, 540, 546, 550, 555.)  There was no change in his work restrictions at that time.  (AR 490.)  Nor does the decrease in weight bearing seem to be related to Plaintiff's symptom testimony, because on the first two dates where Dr. Patel opined that Plaintiff could be

increased to lifting and carrying twenty pounds, Plaintiff had complained that his symptoms were getting worse, and on October 25, 2108, Dr. Patel first noted that Plaintiff was walking with a hunched gait. (AR 467, 488.)  On November 21, 2018, Plaintiff complained that his pain was so intense he was having trouble getting out of bed, but again there was no change in the work restrictions. (AR 497.)  Then on January 31, 2019, Plaintiff complained that his symptoms were getting worse with the passing of time, he had pain all over his body, and complained of intense pain with even the slightest of activities of daily living, and Dr. Patel increased his lifting and carrying restrictions to 20 pounds. (AR 517, 520.)  Again, on April 17, 2019, when Plaintiff complained that his pain was getting worse, Dr. Patel increased his lifting and carrying limitation to 20 pounds. (AR 539, 542.)

Internal inconsistences within a physician's opinion constitutes a legitimate basis for rejecting the opinion. Morgan v. Comm'r, 169 F.3d 595, 603 (9th Cir. 1999).  The Court finds that the ALJ did not err in finding that Dr. Patel's opinions were not persuasive.

### d.  Dr. Hellner's Opinion

The ALJ also considered that on October 15, 2020, Dr. Hellner opined that Plaintiff could lift ten pounds and should be precluded from repetitive bending, lifting, twisting, or straining. (AR 31, 599, 601.)  The ALJ was not persuaded by the opinion of Dr. Hellner. (AR 31-2.)  He stated Dr. Hellner's opinion is not wholly supported by his examination of Plaintiff, as Dr. Hellner himself reported that clinical findings on physical examinations are relatively minimal (AR 599), and that Plaintiff has a high "subjective component" while retaining reasonably good range of motion (AR 598). (AR 32.)  As previously stated, an ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that have been properly discounted. Fair v. Bowen, 885 F.2d 597, 605 (1989).

The ALJ also addressed that Dr. Hellner noted that Plaintiff had limited range of motion of upper extremities without associated muscular or neurological examination and no evidence of atrophy. (AR 32, 595-96.)  Specifically, Dr. Hellner stated,

> Efforts at using his upper extremities in the course of the exam revealed that he has apparent complete inability to use his left arm, wrist, and hand, and when attempting to access information on his cell phone, actually lays the cell phone on top of his left

wrist and hand.  He has limited motion and function involving both upper extremities, despite normal muscular development and normal neurologic exam, with no evidence of atrophy.  He has a significantly positive markedly obvious Waddell's sign, with grimacing and pain with virtually all movement.

(AR 595.)  Yet, examination of the arms and shoulders notes tenderness in the left subacromial space. Negative instability sign and impingement sign bilaterally.  He had full free and easy range of motion of both shoulders.  There was marked tenderness of the left radial head on examination of the elbows and forearms.  Elbow flexion was 140 degrees bilaterally, elbow extension 0 degrees bilaterally.  Biceps, triceps, brachial radialis reflexes were 1+ symmetric, appropriate, and equivalent bilaterally.  Tinel's sign was negative in the cubital tunnel bilaterally.  Wrist examination noted full free and easy range of motion bilaterally.  Tinel's sign was negative in the carpal tunnel and Guyon's canals bilaterally.  Finkelstein's test and Phalen's test is negative bilaterally.  He had normal sensation in the bilateral upper extremities.  Examination of the hands showed no visible thenar, hypothenar, or first dorsal interosseous atrophy.  Key pinch, opposition pinch and intrinsic strength on motor testing of the hands was symmetric, appropriate, and equivalent.  Rapid alternating sequential Jamar dynamometer grip testing strength was 30 kg bilaterally.  (AR 596.) Internal inconsistences within a physician's opinion constitutes a legitimate basis for rejecting the opinion.  Morgan, 169 F.3d at 603.

Further, the ALJ found that Dr. Hellner's opinion was inconsistent with examinations throughout the period that show that he retained five of five strength.  (AR 32, 396, 606, 613, 656, 713, 1408.)  The ALJ also found that Dr. Hellner's opinion was inconsistent with the examination of Plaintiff by Dr. Sharma, who found that he was less limited than opined by Dr. Hellner.  (AR 32, 654-57.)  Additionally, the ALJ found that Dr. Hellner's opinion was inconsistent with imaging of Plaintiff's lumbar spine and reporting by treatment providers that he was not a candidate for spinal surgery.  (AR 32, 348, 368, 371, 641, 901, 1404-06.)

The ALJ did properly consider the supportability and consistency of the opinion as required by the regulations.  Woods, 32 F.4th at 791.  The Court finds that the ALJ did not err in finding that Dr. Hellner's opinion was not persuasive.

///

### e.        Dr. Huang's Opinion

The ALJ considered that between January 20, 2020, and May 15, 2020, Dr. Huang, opined that Plaintiff could occasionally stand and walk, and lift, carry, push, and pull no more than ten pounds.  The ALJ found that Dr. Huang's opinion was not persuasive as it was not supported by a narrative explaining the basis for such limitation.  (AR 32, 585.)  Additionally, the ALJ found that the opinion was not supported by an examination of Plaintiff.  (AR 32.)  Plaintiff argues that this is consistent with other opinions in the record.  (Mot. 12.)  However, Plaintiff does not point to any medical record by Dr. Huang that would support the opinion.  The ALJ reasonably found that the opinion of Dr. Huang was not supported in the record.

The ALJ also found that Dr. Huang's opinion is inconsistent with the conservative treatment provided during the period of Dr. Huang's opinion.  (AR 32.)  Specifically, the ALJ addressed treatment notes by physician's assistant Hembd from Northern California Spine and Rehabilitation.  On March 18, 2020, it is noted that Plaintiff was seen by a spine surgeon who did not recommend surgery.  He was recommended to exercise with both walking and yoga or Pilates.  He was on a low dose of gabapentin to stabilize his pain and the medication was increased.  He was provided with patches for his lumbar spine. He was encouraged to develop a regular exercise program with strength training.  (AR 607.)  On April 27, 2020, the treatment notes Plaintiff was receiving mild improvement on Gabapentin, but reported being over sedated, so he was to be weaned off the Gabapentin and a trial of Lyrica was prescribed.  He continued to be prescribed patches for his lumbar spine.  (AR 610.)

The ALJ did properly consider the supportability and consistency of the opinion as required by the regulations.  <u>Woods</u>, 32 F.4th at 791.  The Court finds that the ALJ did not err in finding that Dr. Hellner's opinion was not persuasive.

### f.        Dr. Davila's Opinion

The ALJ considered the opinion of Dr. Davila who opined that from August 3, 2020, through November 27, 2020, Plaintiff could occasionally stand, intermittently walk, never bend at the waist, twist, squat/kneel, and knee bend, and could lift/carry/push/pull no more than ten pounds.  (AR 32, 1321.)  The ALJ was not persuaded by the opinion of Dr. Davila because it was not supported by

an examination of Plaintiff and is instead based upon a telephone examination.  (AR 32, 18-19.)  Additionally, the ALJ found this opinion to be internally inconsistent as Dr. Davila separately states that Plaintiff was to be placed off work from October 27, 2020, until November 4, 2020, subject to the opinion.  (AR 32, 1326.)  The ALJ reasonably found that the opinion of Dr. Davila lacked support as it was issued without seeing the patient, and there is no record of any findings to explain the limitations or the reason that Plaintiff was placed off work other than that his work note extension ended that day and another appointment was not available until November 4, 2020.  (AR 1324.)

Additionally, the AJJ found that Dr. Davila's opinion was inconsistent with examinations of Plaintiff in July 2020 and September 2020 that indicate that Plaintiff was not as limited as opined by Dr. Davila.  (AR 32.)  On July 11, 2020, Plaintiff was seen, and examination notes he ambulates with non-antalgic gait, but did not want to toe/heel walk due to pain.  There was tenderness throughout lumbar spine, with hyperalgesia in the lower lumbar area from L3-S1.  Plaintiff was able to flex his low back with fingers going to about ankles with mild pain.  He could extend his low back 10 inches with pain.  Reflexes were 3+ and symmetrical at knees and ankles.  Sensation was intact in both lower extremities.  Motor testing showed 5/5 in both lower extremities.  Straight leg raising bilaterally caused back pain and leg tightness. (AR 613.)

Plaintiff was seen again on September 2, 2020, and examination notes he ambulates with non-antalgic gait.  There is tenderness: at L4-Sl.  Examination findings otherwise remained the same.  (AR 713.)

The ALJ did properly consider the supportability and consistency of the opinion as required by the regulations.  Woods, 32 F.4th at 791.  The Court finds that the ALJ did not err in finding that Dr. Davila's opinion was not persuasive.

The Court finds that the ALJ properly considered the medical opinions and prior administrative findings and finds no error.

## V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jose Javier Morales.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 25, 2024**

UNITED STATES MAGISTRATE JUDGE